UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| CAROL J. FLORES, et al., | ) | CASE NO.  1:22-cv-01246 |
| | ) | |
| Plaintiffs, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| SAM'S WEST, d/b/a SAM'S CLUB, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |


Plaintiffs Carol and Ralph Flores filed this suit after Carol Flores slipped and fell at

Defendant Sam's West, Inc.[1] ("Sam's Club") Ontario, Ohio store.  (Doc. No. 1.)  Defendant

moved for summary judgment under Federal Rule of Civil Procedure 56.  (Doc. No. 23.)

Plaintiffs opposed (Doc. No. 29), and Defendant replied (Doc. No. 32.).  Plaintiffs subsequently

moved for leave to file a supplemental brief in support of their opposition to Defendant's motion

for summary judgment.  (Doc. No. 34.)  That motion for leave is also fully briefed.  (Docs. No.

35, 36.)

---

[1] Defendant Sam's Club asserts that Plaintiffs incorrectly identified it as Sam's West, Inc. in
bringing this action, and that its business name is Sam's East, Inc.  (Doc. No. 32 at 584.)  For
consistency, the Court refers to Defendant as Sam's Club, the name under which it does
business.

For the following reasons, Defendant's motion for summary judgment (Doc. No. 23) is DENIED.  Plaintiffs' motion for leave to file a supplemental brief in opposition (Doc. No. 34) is DISMISSED as MOOT.

## I.  Background

### A.  Factual Background

The following facts are both undisputed and pertinent to ruling on the summary judgment motion.[2]

Sam's Club is a is a warehouse-style retail store that sells bulk merchandise to its members.  *See Company and Leadership – Sam's Club Company Facts*, Walmart, https//corporate.walmart.com/about/samsclub/company-and-leadership (last accessed Apr. 29, 2024).  Sam's Club operates a store in Ontario, Ohio.  (Doc. No. 17, ¶ 1.)

The floor of the Ontario store location is polished concrete.  (Doc. No. 26-1 at 31.) The floor is not a uniform color.  Rather, portions of the floor appear dark or light grey throughout the store.  (Doc. No. 26-1 at 322-23.)  These color variations are the result of either stains or differences in  color.  (Doc. No. 27-1 at 288.)

Sam's Club employees testified to the store's procedure for cleaning floors with a scrubbing machine.  At her deposition, Rachel Caseman, an assistant manager on the day Mrs. Flores fell, testified that employees operate a motorized floor scrubbing machine (the "scrubber") each day.  (*Id.* at 286-87.)  John Ewalt, the Sam's Club employee who drove the scrubber the morning Mrs. Flores fell, explained that his familiarity with the scrubber derived

---

[2] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

from reading the operator's manual and that he was "trained . . . well" on how to operate the scrubber.  (Doc. No. 28-1 at 416.)

The scrubber works as follows: an employee drives over an area of the floor, "squeegeeing" and wetting the area as it passes.  (Doc. No. 27-1 at 376.)  The scrubber blows dry and also vacuums up the water it uses in cleaning.  (*Id.*)  When operating normally, a small amout of moisture remains on the floor.  (*Id.*)  Jeremy Hillard, a Sam's Club employee who was working in the store at the time Mrs. Flores fell, described the scrubber remnants as a "small film of water."  (Doc. No. 27-1 at 352, 376.)  Caseman said that the scrubber left no water, because the "squeegee sucks it up."  (Doc. No. 26-1 at 297.)  Ewalt described the residual amount as "not water, . . . just the moist concrete."  (Doc. No. 28-1 at 431.)  Both Hillard and Ewalt testified that when the scrubber is operating normally, the amount of water it leaves is not hazardous.  (Doc. No. 27-1 at 383; Doc. No. 28-1 at 423-24, 430.)

Sam's Club also had general procedures for addressing spills.  Caseman testified that if a Sam's Club employee noticed liquid or some other substance on the floor, that employee must stand and guard that area until another employee can assist with cleanup materials.  (Doc. No. 26-1 at 313.)  Hillard also testified that if an employee found a spill, they were not to leave it unattended.  (Doc. No. 27-1 at 387.)  Ewalt claimed it was that employee's "duty" to stay with the spill.  (Doc. No. 28-1 at 450.)  There are also "spill stations" throughout the store, with rapid-absorption materials employee can use to absorb substances.  (Doc. No. 26-1 at 312.)  Store staff also discuss spill protocols at daily and weekly meetings.  (Doc. No. 27-1 at 386.)

Caseman further testified that customers should not expect to encounter water on the Sam's Club floor and that the floor was expected to be "clean."  (Doc. No. 26-1 at 311, 315.)

Specific to this litigation, on July 5, 2020, Mr. and Mrs. Flores were shopping at Sam's Club.  (Doc. 24-1 at 170; Doc. No. 25-1 at 240.)  They were regular customers at this particular location .  (Doc. No. 24-1 at 171)

They had been browsing the store for about twenty minutes before walking towards the back of the store, where water and other drinks are located.  (Doc. No. 24-1 at 171; Doc. No. 25-1 at 240.)  In the back aisle, Mrs. Flores approached a pallet to look for a product when her right leg slipped out from under her.  (Doc. No. 24-1 at 171-72.)  She collapsed into a "splits" position and landed on her left knee.  (*Id.* at 172.)

At the moment of her fall, Mrs. Flores was not aware what caused her to slip.  (*Id.*)  While Mrs. Flores was lying on the floor, a Sam's Club employee approached Mrs. Flores and asked her where the water had come from.  (*Id.*)  This was the first Mrs. Flores appreciated that water was on the  floor.  (*Id.* at 172, 174.)  Mrs. Flores testified that she did not see anything on the floor, either before or after the accident.  (*Id.* at 174.)  She also testified that there was nothing blocking her view of the floor as she walked up to the area in which she fell.  (*Id.* at 199, 204.)

In his deposition testimony, Ewalt described video footage showing him operating the scrubber in that specific aisle.   He did so minutes before Mrs. Flores fell and directly over the spot at which she fell.  (Doc. No. 28-1 at 453.)  Ewalt recognized that the video footage shows the scrubber noticeably trailing water on the floor while he is operating the machine.  (*Id.* at 455.)

Ewalt drove the scrubber by Hillard, who was working at his station towards the back of the store.  (Doc. No. 27-1 at 351-52.)  Hillard noticed that the scrubber's black rubber hose had been knocked off the back of the scrubber as it drove by.  (*Id.* at 352)  Hillard testified that as a

result, water was coming out the back of the scrubber at "a fairly steady pace." (*Id.* at 360.)  The scrubber had left a trail behind it that stretched back towards aisle forty-two, where Mrs. Flores now lay.  (*Id.* at 365.)  Hillard told Ewalt to stop the scrubber and grabbed equipment to clean the floor.  (*Id.* at 352.)  Caseman, when reviewing the video footage of Ewalt driving the scrubber, testified that "the scrubber just looked like it was leaking water behind it" and was operating improperly.  (Doc. No. 26-1 at 296.)

Mrs. Flores was unable to get up from the floor by herself or with her husband's help due to her pain.  (Doc. No. 24-1 at 174.)  An ambulance eventually took Mrs. Flores to a local hospital.  (Doc. No. 24-1 at 176)  After the accident, another Sam's Club employee let Caseman know that the scrubber had been leaking water.  (Doc. No. 26-1 at 305-306.)

Mr. Flores took photos of the floor, both immediately after Mrs. Flores fell and also at some point after the accident when he had returned to the store.  (Doc. No. 25-1 at 244-46; *see id.* at 272 (Dep. Ex. A), 273 (Dep. Ex. B), 274 (Dep. Ex. C), & 275 (Dep. Ex. D).)  Regarding Exs. C and D, the photos he took of Mrs. Flores and the floor immediately after the accident, Mr. Flores recounted:

> Q:      But I'm talking about the fact that in Exhibit C we can see a discoloration on the floor where it's wet?
>
> A.      Yes, sir.
>
> Q:      And that's why you took that picture?
>
> A:      Correct.
>
> Q:      For Exhibit D, is that another photo that you took on the day of the accident?
>
> A:      I believe so.
>
> Q:      And again, this is a photo you took because it shows that the floor is wet?

A:      Yes.

Q:      And it's wet in the area where your wife fell?

A:      It appears to be.

(Doc. No. 25-1 at 245-46.)

### B.  Procedural Background

On June 22, 2022, Plaintiffs filed this negligence action in the Richland County Court of Common Pleas against Sam's West, Inc. *d/b/a* Sam's Club.  (Doc. No. 1-1 at 9).  Defendant Sam's Club timely removed the action to this Court on July 14, 2022.  (*See* Doc. No. 1.)  Defendant moved this action based on diversity jurisdiction.  (*Id.* at 2.)  Plaintiffs filed an amended complaint on December 20, 2022.  (Doc. No. 15.)

Defendant Sam's Club moved for summary judgment on September 29, 2023.  (Doc. No. 23.)  Plaintiffs opposed on October 27, 2023 (Doc. No. 29) and Sam's Club replied on November 3, 2023(Doc. No. 32).

Meanwhile, Plaintiffs moved for leave to file a supplemental brief *instanter* in support of their motion in opposition to Defendant's motion for summary judgment.  (*See* Doc. No. 34.)  Defendant opposed Plaintiffs' motion for leave.  (Doc. No. 35.)  Plaintiff replied.  (Doc. No. 36.)

### II.  <u>Law & Analysis</u>

Defendant Sam's Club moves for summary judgment on both Plaintiffs' negligence count and a related count of loss of consortium.  (*See* Doc. No. 1.)  Sam's Club motion for summary judgment must be denied because there exist genuine issues of material fact as to whether the Sam's Club owed a duty to Mrs. Flores and whether the water was an open and obvious hazard.

### A.  Standard of Review

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of showing that no genuine issues of material fact exist."  *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) (citations and quotations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Mining Mach., Inc. v. Copley*, 145 F. App'x 149, 152 (6th Cir. 2004) ("The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact.").

A "material" fact is one that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849-50 (6th Cir. 2020) (citations and quotations omitted).

"Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact."  *Queen v. City of Bowling Green, Kentucky*, 956 F.3d 893, 898 (6th Cir. 2020) (quotations and citations omitted).  "[O]n summary judgment, the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,  475 U.S. 574, 588 (1986); *see also Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005).

A party asserting or disputing a fact must cite evidence in the record or show that the record establishes either the absence or the presence of a genuine dispute.  See Fed. R. Civ. P. 56(c) and (e).  "The court need consider only the cited materials, but it may consider other materials in the record." Fed R. Civ. P. 56(c)(3); *see also Street v. J.C. Bradford & Co.*, 886 F.3d 1472, 1479-80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.") (citation omitted).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.  However, the Court's role is not to make credibility determinations or weigh conflicting evidence.  *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014); *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 400 (6th Cir. 2003).  "The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law."  *Payne*, 767 F.3d at 530.

### B.  Negligence

For Count One, Plaintiffs' burden is to show that (1) Sam's Club owed Mrs. Flores a duty of care; (2) Sam's Club breached that duty, and (3) said breach proximately caused her injuries. *Lang v. Holly Mill Hotel, Inc.*, 909 N.E.2d 120, 122-23 (Ohio 2009); *Armstrong v. Best Buy Co., Inc.*, 788 N.E.2d 1088, 1090 (Ohio 2003).  "The failure to prove any one of these elements is fatal to a claim of negligence."  *Reiger v. Giant Eagle, Inc.*, 138 N.E.3d 1121, 1125 (Ohio 2019).

Sam's Club argues for summary judgment in its favor on the basis that the water Mrs. Flores slipped on was an open and obvious danger, and so Sam's Club did not owe Plaintiffs a duty to warn of the water.  (Doc. No. 23 at 116.)  In response, Plaintiffs argue that there exist genuine issues of material fact as to (1) whether the water was an open and obvious hazard and

(2) whether attendant circumstances of the aisle floor existed that would have reduced the degree of care a reasonable person would have exercised while walking in the aisle.  (Doc. No. 29 at 496, 500)

As discussed below, on this record there is a genuine dispute as to whether the water was open and obvious, and whether there were attendant circumstances.  Accordingly, Sam's Club is not entitled to summary judgment on its open-and-obvious danger argument, which is the only argument it brings in its motion.[3]

### 1.  Duty Owed

"[T]he existence of a duty is fundamental to establishing actionable negligence, without which there is no legal liability."  *Deutsch v. Birk*, 937 N.E.2d 638 (Ohio Ct. App. 2010) (citation omitted).  "[T]he determination of the existence of a duty is a question of law based upon the facts of the case."  *Occhipinti v. Bed Bath & Beyond, Inc.*, 2011-Ohio-2588, 2011 WL 2119914, at *3 (Ohio Ct. App. May 27, 2011) (quotations and citations omitted).  *see also Person-Thomas v. Qulliams-Noble Apartments, L.L.C.*, 45 N.E.3d 654, 656 (Ohio Ct. App. 2015).

### a.  Open and Obvious Doctrine

Under Ohio law, "[a] shopkeeper owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger."  *Paschal v. Rite Aid Pharm., Inc.*, 480 N.E.2d 474, 475 (Ohio 1985) (citation omitted).  Business invitees are persons who "come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial

---

[3] Sam's Club could have, for example, raised arguments about whether it breached its duty or whether the spill caused Mrs. Flores' injuries.  Sam's Club did not do so, however, and so the Court does not address those issues in this opinion.

to the owner." *Light v. Ohio Univ.*, 502 N.E.2d 611, 613 (Ohio 1986).  Putative customers like

the Floreses are business invitees.  *See Hasen v. Wal-Mart Stores, Inc.*, 2008-Ohio-2477, 2008

WL 2152000, at *3 (Ohio Ct. App. May 20, 2008).

Shopkeepers must warn their invitees of latent or concealed dangers if the owner knows

or has reason to know of the hidden dangers.  *Jackson v. Kings Island*, 390 N.E.2d 810, 812

(Ohio 1979).  "A shopkeeper is not, however, an insurer of the customer's safety."  *Paschal*, 480

N.E.2d at 475.

For instance, shopkeepers need not protect business invitees from dangers which are

known to the invitee or are "so obvious and apparent to such invitee that he may reasonably be

expected to discover them and protect himself against them."  *Id.* (citation and quotation

omitted).  Where applicable, this open-and-obvious doctrine "obviates the duty to warn and acts

as a complete bar to any negligence claim."  *Armstrong v. Best Buy Co.*, 788 N.E.2d 1088, 1090

(Ohio 2003).  "The rationale behind the doctrine is that the open and obvious nature of the

hazard itself serves as a warning.  *Simmers v. Bently Constr. Co.*, 597 N.E.2d 504, 506 (Ohio

1992).  Thus, the premises owner "may reasonably expect that persons entering the premises will

discover those dangers and take appropriate measures to protect themselves."  *Id.*

"Typically, whether a danger is open and obvious is a question of law" and is therefore

an appropriate basis for summary judgment.  *See McLaughlin v. Andy's Coin Laundries, LLC*,

112 N.E.3d 57, 61 (Ohio Ct. App. 2018); *see also Uhl v. Thomas*, 2009-Ohio-196, 2009 WL

119844, at *3 (Ohio Ct. App. Jan. 20, 2009) ("Whether a hazard is an open and obvious

condition is a matter of law to be determined by the court, and therefore, a suitable basis for

summary judgment." (quotation and citation omitted); *Aycock v. Sandy Valley Church of God*,

2008-Ohio-105, 2008 WL 115829, at *4 (Ohio Ct. App. Jan 8, 2008) ("In most situations,

whether a danger is open and obvious presents a question of law.").  This is because "the open and obvious doctrine is determinative of the threshold issue, the landowner's duty."  *Anderson v. Ruoff*, 654 N.E.2d 449, 451 (Ohio 1995).

Courts decide whether a hazard is open and obvious as a matter of law if only one conclusion can be drawn from established facts.  *See, e.g.*, *Asher v. Glenway Real Estate, LLC*, 149 N.E.3d 1035, 1030 (Ohio Ct. App. 2019).

A court uses an objective standard to determine whether a danger is open and obvious, and the fact that a particular plaintiff herself is not aware of the hazard is not dispositive of the issue.  *Williams v. Strand Theatre & Cultural Arts Ass'n, Inc.*, 2019-Ohio-95, 2019 WL 193654, at *3 (Ohio Ct. App. Jan. 15, 2019).  Rather, "the determinative question is whether the condition is *discoverable* or *discernable* by one who is acting with ordinary care under the circumstances."  *Uhl*, 2009 WL 119844, at *3 n.1 (emphasis in original ) (quotations and citations omitted).  "A dangerous condition does not necessarily need to be observed by the injured party, it just objectively needs to be observable."  *Id.*; *see also Doe v. SexSearch.com*, 551 F.3d 412, 420 (6th Cir. 2008) ("A risk is considered open and obvious when its dangers are within the body of knowledge common to the community and generally known and recognized by the ordinary consumer.") (quotations and citations omitted).

"[T] he existence and obviousness of an alleged danger requires a review of the underlying facts."  *Ruz-Zurita v. Wu's Dynasty, Inc.*, 2008-Ohio-300, 2008 WL 224354, at *3 (Ohio Ct. App. Jan. 29, 2008) (citations omitted).  For instance, Ohio courts review photographs in the record from which they may conclude whether a hazard was open and obvious.  *E.g.*, *Tarpley v. Aldi Inc.*, 2013-Ohio-624, 2013 WL 683529, at *2-3 (Ohio Ct. App. Feb. 22, 2013).  From such evidence, "[c]ertain clearly ascertainable hazards or defects may be deemed open and

obvious as a matter of law for purposes of granting summary judgment." *Ru-Zurita*, 2008 WL 224354 at *3. But "[w]here reasonable minds could differ as to whether a hazardous condition is open and obvious, a genuine issue of fact exists for a jury to review." *Johnson v. Metrohealth Med. Ctr*, 2007-Ohio-392, 2007 WL 274383, at *3 (Ohio Ct. App. Feb. 1, 2007) (citing *Klauss v. Marc Glassman, Inc.*, 2005-Ohio-1306, 2005 WL 678984 (Ohio Ct. App. Mar. 24, 2005).

### b. Spills & Attendant Circumstances

Ohio courts often hear cases where retail customers seek damages for injuries caused by slipping on a business's wet floor. In such cases, courts examine the specific facts and circumstances of the accident to determine whether the spilled substance was open and obvious at the time of the accident. *See Horner v. Jiffy Lube Intern., Inc.*, 2002-Ohio-2880, 2002 WL 1224969, at *4 (Ohio Ct. App. June 6, 2002) ("Although the determination of the existence and obviousness of a danger is a question of law, it requires the review of the facts of each particular case.") (citation omitted).

For example, "the presence of water on a business floor tends to be an open and obvious condition when the facts involve some expectation on the part of the invitee that water might be encountered." *Kraft v. Dolgencorp, Inc.*, 2007-Ohio-4997, 2007 WL 2758605, at *5 (Ohio Ct. App. Sept. 19, 2007). In *Paschal v. RiteAid*, 480 N.E.2d at 475-76, the Ohio Supreme Court held that a shop owner wasn't liable to a plaintiff who slipped and fell on a puddle of water that had been caused by snow and rain tracked into the store by other patrons. Likewise, in *Caravella v. West WHI Columbus Northwest Partners*, 2005-Ohio-6762, 2005 WL 3843604, at *6 (Ohio Ct. App. Dec. 20, 2005), the Ohio Court of Appeals reasoned that the plaintiff was aware it was wet and rainy outside supported a finding that the water on the store floor was open and obvious. *Compare Kidder v. Kroger*, 2004-Ohio-4261, 2004 WL 1802050, at 82 (Ohio Ct. App. Aug. 13,

2004) (water not open and obvious when plaintiff slipped immediately after turning the corner at the end of the aisle, having little advance opportunity to see hazard).

Courts also look to the appearance of the substance relative to the floor. Where a substance and the floor are similar in color, the danger is less obvious.  In *Horner*, 2002 WL 1224969 at *5, the Ohio Court of Appeals found that an oil pit in a garage was not open and obvious because the placement and color of the oil pan within the oil pit may have made the oil pit difficult to see in contrast with the floor:

> The floor of the garage area was unpainted cement and, consequently, gray in color.  The oil pan, which was black in color, may have been difficult to see given the similarity in color to the floor.  Additionally, the oil pan itself, which stretched across the width of the oil pit, may have given the illusion that it was part of the solid floor.  Due to the similarity of the color between the oil pan and the floor and the pan's placement in the pit, appellant's peripheral view of the area may have indicated to her that there was no break in the floor."

*Id. Cf. Navarette v. Pertoria, Inc.*, 2003-Ohio-2022, 2003 WL 21864802, at *1 (Ohio Ct. App. Aug. 8, 2023) (plaintiff slipped on a dark-colored soda spill that was open and obvious compared to light-colored sidewalk).  Clear liquids like water are harder to see due to their transparent nature and are less obvious.  *See Niehaus v. Kroger Co.*, No. 00AP-1083, 2001 WL 664444, at *2 (Ohio Ct. App. June 14, 2001) ("We also note the obvious, that water is transparent and may not be easily detected by unsuspecting shoppers.); *Middleton v. Meijer,* 2010-Ohio-3244, 2010 WL 2706303, at *4 (Ohio Ct. App. July 10, 2010) (clear laundry detergent not open and obvious on light colored floor); *Kidder*, 2004 WL 1802050 at *2 (clear water on the floor difficult to detect).  However, courts have declined to find as a matter of law that all clear spills present an open and obvious hazard: "the mere fact that water is transparent does not require the conclusion that genuine issues of material fact necessarily exist as to the obviousness of the hazard presented by the water." *Caravella*, 2005 WL 3484604 at *7 (finding standing water on floor to

be open and obvious); *Brant v. Meijer*, 2006-Ohio-6300, 2006 WL 3461966, at *3 (Ohio Ct.

App. Dec. 1 2006) (same).

Courts also examine evidence of whether, after the fall, a plaintiff acknowledged that a

spill is visible upon inspection.  Such acknowledgements support a court finding that the spill it

may be objectively discoverable upon ordinary inspection.  *Uhl*, 2009 WL 119844, at *3 n.1.  In

*Smith v. Kroger Co.*, 2011-Ohio-187, 2011 WL 1458667, at *2-3 (Ohio Ct. App. Dec. 1, 2008),

the Ohio Court of Appeals found that clear water on a shiny tile floor was open and obvious.

The *Smith* plaintiff acknowledged that when he returned to the aisle after his fall, he was able to

see the clear water on the floor from ten feet away.  *Id.* at *2.  "Consequently, the hazard in aisle

two was not hidden from view or concealed, and was discoverable by ordinary inspection."  *Id.*

at *3.  *See also Brant*, 2006 WL 3461966at *3 (plaintiff's "testimony that she saw the puddle

after the fall establishes that it was visible to an ordinary observer looking directly where she was

walking"); *Caravella*, 2005 WL 3484604 at *7 (plaintiff's "admission that the tile floor was

noticeably wet with standing water belies his contention that the water was not observable due to

its transparency and demonstrates that the water upon which he fell was open, obvious, and

discoverable by ordinary inspection.").

However, other courts examining the same issue do not find that such admissions by

plaintiffs conclusively determine that a spill is open and obvious.  This is because once the

accident has happened, a plaintiff may be more attuned to the circumstances causing the

accident. For example, the *Kraft* court reasoned that "the fact that [the plaintiff] saw water after

her fall does not carry great weight since she indicated that she was laying in it at the time."

2007 WL 2759605 at *7.  Ultimately, the fact that a plaintiff says that a puddle of water on a

store floor "was observable on a subsequent examination may be determinative of whether [the

p]laintiff should have seen it, but not whether it was as a matter of law open and obvious."

*Middleton*, 2010 WL 2706303 at *5 (Grady, J., concurring).

Courts also look to whether attendant circumstances would have prevented an ordinary observer from seeing a hazard, which would make it neither open nor obvious. Attendant circumstances are "any distraction that would come to the attention of a pedestrian in the same circumstances and reduce the degree of care an ordinary person would exercise at the time." *Horner*, 2002 WL 1224969 at *5 (quoting *Walters v. City of Eaton*, 2002-Ohio-1338, 2002 WL 449552, at *4 (Ohio Ct. App. Mar. 25, 2002)). Courts note whether attendant circumstances existed in their analysis. *See, e.g.*, *id.* at *5 (noting that plaintiff could have been distracted by attendant circumstances of noise and activity of busy garage); *Caravella*, 2005 WL 3484604 at *6 (noting that plaintiff presented no evidence of attendant circumstances).

### c.    Application

As an initial matter, the parties both proffer cases they argue are on-point and should guide the Court's decision-making.

Plaintiffs analogize the instant to case to *Nienhaus*, 2001 WL 664444 at *2-3. (Doc. No. 29 at 497.) In *Neinhaus,* a store's cleaning crew was using a scrubber to mop the floor. *Id.* at *2. An employee testified that the because the scrubber left behind a trail of water, another person was required to follow the scrubber and mop up the trail. *Id.* In finding that the hazard left by the scrubber was not open and obvious, the *Nienhaus* court noted that there was evidence that the store failed to follow its scrubbing cleaning procedure, "leaving hard to detect water on the floor which caused appellant to fall." *Id.* at *2-3.

Sam's Club distinguishes *Neinhaus* and encourages the Court to rely on the Ohio Court of Appeals' opinion in *Navarette*, 2003 WL 21864802 at *1. (Doc. No. 23 at 122; Doc. No. 32

at 586.)  In *Navarette*, the plaintiff slipped on frozen soda, which was darker than the light-colored sidewalk.  Sam's Club argues that because the water on the floor was noticeably darker than its stores cement floor, Mrs. Flores' fall presents a case "where an invitee simply missed seeing a hazard that was clearly visible until after she fell."  *Id.* at *1.

The Court declines to find any case cited by either party so analogous that it is determinative.  Rather, the Court's review of relevant caselaw "demonstrate[s] only that whether a given hazard is 'open and obvious' involves a fact-intensive inquiry, and . . . confirm[s] our prior observation that 'comparing the facts of a given case with other cases is of limited value.'" *Kidder v. Kroger Co.*, 2004-Ohio-4261, 2004 WL 1802050, at *3 (Ohio Ct. App. Aug. 13, 2004).  The Court now turns to applying the relevant body of caselaw to the facts and evidence in the instant case.

Here, the Court cannot say that as a matter of law, the water spill on the Sam's Club aisle that Mrs. Flores slipped on was an open and obvious danger.  Viewed from a reasonable distance, there is a genuine dispute as to whether a customer exercising ordinary care would have seen the spill and recognized it as a hazard.  (*See* Doc. No. 28-2 at 478-79.)

First, there is no evidence that Plaintiffs had reason to expect hazardous conditions on the floor.  The accident took place in July, and there is no evidence in the record to suggest that inclement weather may have caused puddles to be tracked around the store.  At the time, Sam's Club did have a practice of running the scrubbing machines during business hours when customers were in the store.  (Doc. 26-1 at 288, 294.)  However, multiple employees testified that when the scrubber was functioning normally, it usually left a negligible amount of water that shouldn't have posed a hazard to customer, as it would evaporate quickly.  Caseman, the assistant manager, testified that Sam's Club customers should not expect water on the floors and

that floors should be clean.  *See Nienhaus*, 2001 WL 664444 at *2 ("We cannot agree that

shoppers who happen to frequent a store during cleaning hours assume the risk of being

injured.").  Mrs. Flores testified that the July 5, 2020 visit was a regular tip to the Sam's Club

where she and her husband were frequent customers. (Doc. No. 24-1 at 171.).  Nothing in the

record indicates that Mrs. Flores was distracted acting unreasonably as she approached the

pallets. So, there is nothing to suggest that a reasonable person in Mrs. Flores' position should

have been aware of a heightened risk or expected to encounter a water spill as they walked in the

aisle.

The photographs and videos in the record allow the Court to review the floor in the area

immediately after Mrs. Flores fell.  True, this does not appear to be a case where a completely

clear liquid blends seamlessly into a floor, creating an open and obvious danger.  *See, e.g.*,

*Middleton*, 2010 WL 2706303 at *4; *Kidder*, 2004 WL 1802050 at *2; *Nienhaus*, 2001 WL

664444 at *1.  Still, neither does the Sam's Club floor present the stark disparity that the

*Navarette* court saw presented by spilled dark soda on a pale sidewalk.

Plaintiffs' argument that attendant circumstances prevented the water spill from posing

an open and obvious danger are well taken.  Here, both Sam's Club employees and Mr. Flores

testified that the Sam's Club floor is stained in a non-uniform manner throughout the store.

(*See* Doc. No. 25-1 at 241; Doc. No. 26-1 at 323; Doc. No. 27-1 at 383; Doc. No. 28-1 at 445,

447.)  It is a reasonable inference this such staining and discoloration would be familiar to a

reasonable person as they walk from the front to the back of the store, especially if they were a

repeat customer like the Plaintiffs.  Looking at the photographs of Mrs. Flores' fall, it is not

apparent to the Court that a reasonable person, familiar with Sam's Club, would recognize the

marks besides Mrs. Flores as water presenting a hazard, rather than a permanent, stationary

stain on the concrete.  A jury could reasonably find that a customer could conceivably disregard these stains as non-hazardous and decrease the attention paid to dark spots on the floor.  *Horner*, 2002 WL 1224969 at *5.  So, the Court finds that there is a genuine issue of material fact as to whether the Sam's Club floor staining and discoloration created attendant circumstances, and thus, whether the water spill was open and obvious.

In support of their contention that the water spill was open and obvious, Defendant Sam's Club relies on testimony by Mr. Flores that he took photos of the area immediately after Mrs. Flores fell, specifically *because* Mr. Flores was able to observe that the floor was wet.  (Doc. No. 23 at 123-25.)  Mrs. Flores also acknowledged in her testimony that the concrete looked discolored, when looking at a photo of her lying in the aisle immediately after falling.  (Doc. No. 24-1 at 202.)  Defendants argue that because the Plaintiffs acknowledged that they could see the water after the fact, it is "undisputed" that the water was objectively observable and therefore open and obvious.  (Doc. No. 23 at 124.)

However, Mr. Flores only took the photos of the ground and his wife *after* she had fallen. The Court will not interpret Mr. Flores' testimony that because he could see discoloration or wetness on the floor *after* his wife fell, that the discoloration or wetness was objectively observable as that hazard *before* anyone fall.  After all, "[t]here exist few substances that are completely invisible when one knows to look for it and is looking directly at it."  *Szerszen v. Summit Chase Condominiums*, 2010-Ohio-4518, 2010 WL 3722637, at *5 (Ohio Ct. App. Sept. 23, 2010).  Relying on this testimony would risk engaging in the post-hoc fallacy that Ohio courts have rejected when looking at plaintiffs' acknowledgements of visible spills after the fact.  *See Middleton*, 2010 WL 2706303 at *5 (Grady, J., concurring).  The Court does not find

that the Flores' testimony to that effect establishes that the water was open and obvious as a matter of law.

Finally, Plaintiffs present convincing testimony evidence from Hillard that, on the day of Mrs. Flores' accident, the scrubber was malfunctioning by emitting greater amounts of water than normal.  Further, drawing all inferences in Plaintiffs' favor, evidence suggests that Sam's Club manufacturing scrubber caused the water spill that caused Mrs. Flores' fall.  And, evidence shows that several people, including a Sam's Club employee, passed by the scrubber's abnormal water deposits in aisle where Mrs. Flores fell without indicating that they recognized it as a hazard.  Surely if a Sam's Club employee, who was trained to recognize and proactively guard against spill hazards, did not notice the spill feet away from where they were walking, a jury could plausibly find that a reasonable person would also not notice the same spill.

On this record, the Court cannot say as a matter of law that the water was open and obvious or that attendant circumstances created by the Sam's Club's floor discolorations didn't decrease the attention a reasonable person would have paid to the floor.  There exist genuine disputes of material fact as to both, and it is premature for the Court to hold as a matter of law that Sam's Club did not owe Mrs. Flores a duty to warn of the hazard.  Summary judgment is therefore inappropriate at this time.

### C.  Loss of Consortium

In addition to their count of negligence, Plaintiffs also sued Defendant Sam's Club for loss of consortium.  (Doc. No. 15 at 96.)  Sam's Club moved for summary judgment on the loss-of-consortium count as well, arguing that because it is derivative of Plaintiffs' negligence claim, it cannot survive summary judgment.  (Doc. No. 23 at 126.)

In Ohio, a spouse may bring a cause of action for damages for loss of consortium against a person who, either intentionally or negligently, injures their spouse and thereby deprives them

of spousal companionship, care, and love.  *See Bown v. Kil-Kare, Inc.*, 585 N.E.2d 384, 391 (Ohio 1992).  "[A] claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury."  *Id.*

Because Plaintiffs' negligence claim survives summary judgment, so too does their claim for loss of consortium.

### D. Motion for Leave to File Supplement

Defendant Sam's Club motion for summary judgment became ripe on November 3, 2023. (*See* Doc. No. 32.)  On December 22, 2023, Plaintiffs moved for leave to file a supplemental brief in support of their opposition to Sam's Club motion for summary judgment.  (Doc. No. 34.) Plaintiffs wished to supplement their opposition with evidence from the deposition of Linda Carney, a Sam's Club employee who walked by the area where Mrs. Flores fell minutes before the accident.  (*Id.* at 641.)  Plaintiffs say that Carney's deposition was not available until after the deadline for the filing of their memorandum in opposition to Sam's Club's summary judgment motion.  (*Id.*)  Defendants opposed Plaintiffs' motion for leave to supplement, Doc. No. 35, and Plaintiffs replied, Doc. No. 36.

As previously discussed, the Court finds that there is a genuine issue of material fact regarding whether the water was an open and obvious hazard.  The Court reached this conclusion solely from considering the facts and evidence submitted with the parties' initial briefings on the motion for summary judgment.  So, the Court need not reach Plaintiffs' motion for leave to supplement their memorandum in opposition at this time.  Plaintiff's motion for leave to file is dismissed as moot.

### III. Conclusion

For the foregoing reasons, the Court DENIES Defendant Sam's Club motion for summary judgment.  The Court DISMISSES as MOOT Plaintiffs' motion for leave to file a supplemental brief in opposition.

**IT IS SO ORDERED.**

**Date:** July 1, 2024

_____

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE